ALBANY,
Feb. 1828.

Livingston
v.
Adams.

*LIVINGSTON *against* ADAMS and RIDER.

Where one builds a mill-dam upon a proper model, and the work is well and substantially done, he is not liable to an action, though it break away, in consequence of which his neighbor's dam and mill below are destroyed. Negligence should be shown, in order to make him liable.

ACTION on the case, brought to recover damages sustained by the plaintiff, in consequence of the erection, continuance and final breaking away of a dam at the head of Catskill creek; tried at the Schoharie circuit in October, 1826, before DUER, C. Judge.

On the trial, it appeared that the dam had been built by the defendants for the purpose of their mills, at the outlet of the fly, the head of the Catskill creek, several years previous to its going off, which was in April, 1824. That the plaintiff's mill and dam, situated below the defendants', was carried off at the same time, in consequence of the breaking and letting off the pond of the defendants.

Much evidence was given on the trial, the result of which is stated in the opinion of the court; and need not be given here. It related to the manner of building and maintaining the dam, and the occasion of its giving way : which was submitted to the jury, under a charge from the judge, that if it had broken away by the act of God, the defendants were not responsible ; but if by the defendants' neglect, and the insufficient erection and repair of the dam, they were responsible. That the distinctions of slight, ordinary and gross negligence, originated with, and were applicable to cases where the relation of bailor and bailee existed; not to a case like the present : and if the jury were of opinion that the dam had been insufficiently built, or negligently maintained, without entering into minute or refined calculations as to the degrees of negligence or deficiency, the defendants were liable. Verdict for the defendants.

A motion was now made, in behalf of the plaintiff, for a new trial on the ground that the verdict was against the weight of evidence.

*J. Van Orden* and *D. Cady*, for the motion, cited 10 John. 241 ; 17 John. 306.

*J. *Jenkins* and *J. O'Brien*, contra, cited 6 John. 90; 17 id. 98.

I give those cases only, cited by counsel, which relate to the point decided by the court, viz. the application of the maxim *sic utere tuo ut alienum non lædas.*

*Curia, per* SUTHERLAND, J.  The motion for a new trial is founded exclusively on the ground that the verdict is against the weight of evidence.  The plaintiff does not complain of the charge, or any decision of the judge in the progress of the trial.  He put the responsibility of the defendants solely on the ground of negligence; and instructed them, that if they were of opinion that the dam had been insufficiently built or negligently maintained, without entering into minute or refined clculations as to the degrees of negligence, the plaintiff was entitled to recover. The jury, under this charge, found a verdict for the defendants; and, upon a careful consideration of the evidence, I think it supports the verdict.

All the witnesses, both on the part of the plaintiff and defendants, concur in the general statement, that the dam was built upon a proper model, and that the work was well and substantially done, with the single exception of the braces from the mud-sills to the posts which supported the breast work of the dam.  Some of the witnesses suppose that these were not as substantial as they should have been; but the weight of evidence upon this point unquestionably is, that these braces were of very little, if of any importance, after the completion of the dam.  They were designed to sustain the breast-work until the gravel with which the dam was filled in, had settled and become firm and compact.  After that the pressure was upon the gravel, and there could be none upon the breast-work, unless the mass of gravel was moved forward upon it.  Mr. Culver, who appears to have had great experience in the building of dams, is unequivocally of this opinion; and he is supported by several other intelligent witnesses.

*But another answer to this imputation of negligence is,    [*177]

that the whole mass of evidence shows the dam did not go off in consequence of the breast-work giving way ; but that it was undermined. Admitting the braces, therefore, to have been insufficient, still, as the plaintiff's injury has not resulted from that cause, it cannot justify a recovery against the defendants.

The testimony renders it probable, and such undoubtedly was the conclusion of the jury, that a leak was produced in the bottom of the dam, most likely by the operation of frost, through which the water gradually found its way until the aperture was so enlarged as finally to subvert the dam. Now, the evidence shows that unusual pains were taken to secure the dam on the inside, by filling it with an immense quantity of gravel. The mud-sills were well bedded and covered with this mass of earth. If, notwithstanding these precautions, the water found its way through, it cannot be attributed to the negligence of the defendants. There is no reason to suppose that the dam was injured by the water running over it.

On the whole, I am entirely satisfied with the verdict; and think the motion for a new trial should be denied.

New trial denied.[1]

[1] In *The Mayor, &c., of New York* v. *Bailey*, (2 Denio Rep. 433,) it was said, that the degree of care which a party, who dams a stream, is bound to use, must be in proportion to the injury likely to result to third persons, provided it should prove insufficient to resist occasional extraordinary freshets. It must be such care as a discreet and prudent man would use, if the whole risk of loss was his own.